IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE LATIFF ADAMS, | ) | Case No. 5:17-cv-2579 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| KIMBERLY CLIPPER, WARDEN, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Jermaine Latiff Adams, Ohio Inmate # A681065, has petitioned the court for a writ of habeas corpus under 28 U.S.C. § 2254.[1]  Respondent, Kimberly Clipper, warden at the Lorain Correctional Institution (where Adams was housed at the time he filed his petition) filed an answer/return of writ.[2]  The matter was automatically referred to me for preparation of a report and recommendation on December 15, 2017.

On February 5, 2016, a jury found Adams guilty of murder.  ECF Doc. 6-1 at 30. Following a simultaneous bench trial, Adams was also found guilty of having weapons while under disability.  ECF Doc. 6-1 at 36-37.  On May 24, 2016, Adams was sentenced to serve an aggregate prison term of twenty years to life.  ECF Doc. 6-1 at 37.  He is currently incarcerated at the Lebanon Correctional Institution where Chae Harris is warden.[3]

---

[1] ECF Doc. 1.
[2] ECF Doc. 6.
[3] https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A681065 (last visited 8/12/19).

Adams' petition raises four grounds for relief.[4]  On June 8, 2018, Warden Clipper filed a return of writ.[5]  Adams filed a traverse on July 12, 2018.[6]  Because Adams' grounds for relief lack merit, are procedurally defaulted and/or do not present issues cognizable on habeas review, I recommend that his claims be DISMISSED with prejudice, and his petition for writ of habeas corpus be DENIED.

Also before the court are Adams' motion to clarify (ECF Doc. 8) and motion for leave to file a motion to relate back (ECF Doc. 9).  By separate journal entry, the court will GRANT the motion to clarify the argument concerning cause and prejudice for the procedural default of Adams' Ground Two claim but DENY, as futile, his motion for leave to assert a claim of ineffective assistance of counsel arising from his trial counsel's failure to object to the trial court's jury instruction on self-defense.

## II.      Procedural History

### A.       State Convictions

On October 27, 2015, Adams was indicted on one count of murder under Ohio Rev. Code § 2903.02(B) (Count One) with a three-year firearm specification under Ohio Rev. Code § 2941.145; and one count of having weapons while under disability under Ohio Rev. Code § 2923.13(A)(3) (Count Two).  ECF Doc. 6-1 at 3-4.  After an attorney was appointed, Adams pleaded not guilty.  On February 1, 2016, Adams executed a jury waiver and elected to be tried by the court on Count Two.  ECF Doc. 6-1 at 7.

The jury trial on the murder charge began on February 1, 2016.  ECF Doc. 6-1 at 8.  On February 5, 2016, the jury found Adams guilty of murder as charged in Count One.  *Id.*.  The

---

[4] ECF Doc. 1.
[5] ECF Doc. 6.
[6] ECF Doc. 7.

court also found Adams guilty of having weapons while under disability as charged in Count

Two.  ECF Doc. 6-1at 13-14.  The trial court sentenced Adams to serve a term of fifteen years to

life imprisonment on the murder conviction, a three year mandatory consecutive term on the

firearm specification and a twenty-four month consecutive term on the weapon under disability

charge.  ECF Doc. 6-1 at 15-16.  Adams' aggregate sentence was twenty years to life in prison.

*Id.*

> **B.    Direct Appeal**

Represented by new counsel, Adams filed a notice of appeal with the Ohio Court of

Appeals on May 26, 2016.  ECF Doc. 6-1 at 18.  Adams raised the following assignments of

error on direct appeal:

> 1.  Appellant's convictions were against the manifest weight and sufficiency of
>     the evidence.
>
> 2.  The trial court abused its discretion in admitting gruesome photos which were
>     inflammatory and highly prejudicial.
>
> 3.  Appellant was denied a fair trial as a result of prosecutorial misconduct.
>
> 4.  The trial court erred when it instructed the jury that appellant had a duty to
>     retreat.
>
> 5.  Appellant was denied his Sixth Amendment right to effective assistance of
>     counsel.
>
> 6.  The trial court abused its discretion when it did not allow testimony to be
>     presented concerning the victim's criminal record.

ECF Doc. 6-1 at 23.  The Ohio Court of Appeals affirmed the trial court's judgment on March

27, 2017.  ECF Doc. 6-1 at 83, *State v. Adams*, Fifth Dist. Ohio No. 2016CA00106, 2017-Ohio-

1145, 2017 Ohio App. LEXIS 1817.

Adams filed a timely, *pro se* notice of appeal to the Ohio Supreme Court.  ECF Doc. 6-1

at 128.  Adams' memorandum in support of jurisdiction raised the following propositions of law:

I.      Appellant's convictions were against the manifest weight and sufficiency of the evidence. ECF Doc. 6-1 at 113.

II.     The trial court abused its discretion in admitting gruesome photos which were inflammatory and highly prejudicial. *Id.*

III.    Appellant was denied a fair trial as a result of prosecutorial misconduct. ECF Doc. 6-1 at 114.

IV.     The trial court erred when it instructed the jury that appellant had a duty to retreat. *Id.*

V.      Appellant was denied his Sixth Amendment right to effective assistance of counsel. ECF Doc. 6-1 at 115.

VI.     The trial court abused its discretion when it did not allow testimony to be presented concerning the victim's criminal record. *Id.*

On September 13, 2017, the Ohio Supreme Court declined jurisdiction. ECF Doc. 6-1 at 143.

**C.      Post-Conviction Relief Filings**

On August 24, 2017, Adams filed a *pro se* petition to vacate or set aside judgment of conviction or sentence on the ground that he was denied effective assistance of counsel when counsel failed to permit him to testify at trial. ECF Doc. 6-1 at 144. The state filed a response in opposition and motion to dismiss or for summary judgment. ECF Doc. 6-1 at 149. On May 30, 2017, the trial court denied the petition as barred by *res judicata* because defendant could have – but did not – raise this issue at trial or on direct appeal. ECF Doc. 6-1 at 156.

Adams filed a timely *pro se* notice of appeal (ECF Doc. 6-1 at 160) but he didn't file an appellant's brief. For this reason, the court of appeals dismissed the appeal for want of prosecution on September 7, 2017. ECF Doc. 6-1 at 162. On October 16, 2017, Adams filed a *pro se* delayed motion for reconsideration. ECF Doc. 6-1 at 163. The court of appeals denied the motion on October 25, 2017. ECF Doc. 6-1 at 166. Adams did not appeal to the Ohio Supreme Court.

4

### III.    Federal Habeas Petition

On November 15, 2017[7], Adams filed his *pro se* petition for a writ of habeas corpus,

raising four grounds for relief:

> **GROUND ONE:**
> Petitioner's convictions are against the manifest weight of the evidence.
> > **SUPPORTING FACTS:**
> > The Jury lost its way and convicted Petitioner when the record clearly
> > shows that Petitioner was defending his personal safety.
>
> **GROUND TWO:**
> The trial court provided erroneous jury instructions.
> > **SUPPORTING FACTS:**
> > The trial court provided erroneous jury instructions to the jury, failing to
> > give a duty to retreat instruction.
>
> **GROUND THREE:**
> The prosecutorial misconduct in this case denied petitioner his right to a fair trial.
> > **SUPPORTING FACTS:**
> > The prosecutor testified to evidence not contained within the record and
> > during the course of the trial, made statements of personal belief as to the
> > alleged facts of the case.
>
> **GROUND FOUR:**
> Petitioner was denied his right to effective assistance of appellate counsel.
> > **SUPPORTING FACTS:**
> > Appellate counsel for Petitioner failed to notify Petitioner of his post-
> > conviction rights as well as the time frame(s) for said motions.

ECF Doc. 1 at 5-11.

### IV.    Law and Analysis

#### A.    Factual Background

We begin with the factual determinations from the Ohio courts.  Factual findings of state

courts are presumed correct unless a petitioner rebuts them by clear and convincing evidence.  28

---

[7] Adams placed his petition in the prison mailing system on November 15, 2017.  ECF Doc. 1 at 16.  His
petition was filed in the clerk's office on December 12, 2017.

U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760, 775 (6th Cir. 2013).  The Ohio Court of

Appeals made the following findings of fact:

> {¶ 2}   This case arose on August 16, 2015, when victim Alondo Perry
> was shot four times by appellant, his housemate.  Perry died as a result of
> his injuries.

> {¶ 3}   Appellant, his girlfriend Beth Hartsel, and their child lived in a
> house on 23rd Street Northwest in Canton.  Also living in the house were
> Alondo Perry, Jessica Smith, and Carlton Trammel.  Smith's two young
> children were sometimes present as well.

> *Carlton Trammel*

> {¶ 4}   On August 16, Trammel was sitting in a chair in appellant's
> bedroom watching television, as he was accustomed to do.  Appellant and
> Perry arrived at the house and knocked on the front door because they did
> not have a key.  Trammel let them in and all three went into appellant's
> bedroom to watch television.  Shortly thereafter Perry took a call on his
> cell phone and briefly left the room.  Upon his return, appellant asked
> Trammel to leave the room so he and Perry could talk.  Trammel grabbed
> a cigarette and left the house through a back door.  He walked across the
> backyard toward a friend's house when he heard a muffled sound like "ch-
> ch-ch" and someone screamed.  Trammel kept walking and "[tried] to
> think about nothing."  T. 307.  He did not return to the house that night.

> {¶ 5}   Trammel testified that appellant and Perry were not agitated or
> fighting when they came into the house or while they were in the
> bedroom.  Trammel was unaware of any problem between the two at all
> and did not become aware of the murder until the next day.

> *Jessica Smith*

> {¶ 6}   Jessica Smith was arrested on a material witness warrant and
> reluctantly testified at trial.  Smith lived at the house intermittently and
> was present on the evening of August 16, 2015.  She heard appellant and
> Perry come home and go into appellant's bedroom.  Smith was in a
> bathroom in the back of the house bathing one of her children when Beth
> Hartsel came into the bathroom yelling and locked the door.  Smith and
> Hartsel gathered the children and led them out of the house.

> {¶ 7}   As they left, Smith saw Perry's body on the floor.  Appellant was
> sitting on the steps with a gun in his hand and Smith asked him what
> happened.  Appellant told her someone tried to rob Perry and told her to
> call 911.  Smith called 911 and said an ambulance was needed.  Smith,
> Hartsel, and the children left the scene.

*Conflicting Stories to E.M.T.s and Police*

{¶ 8}   E.M.T.s arrived on the scene first, without police, because the 911 caller requested medical attention and hung up.  First responder Michael Rodriques arrived and found a man standing on the front porch.  The man told him someone inside the house needed a medic.  Rodriques asked, "What's wrong with him?" and the man responded "I shot him."  In response to Rodriques' questions, the man said the victim broke into the house and they struggled over a gun.  Rodriques entered the house and found Perry on the floor, already deceased.  Rodriques called police and started C.P.R.  Appellant sat on the couch and was present when police arrived.

{¶ 9}   Ptl. Christopher Wells was among the first police officers on the scene.  He found appellant sitting in a chair, sweating profusely and breathing heavily.  Appellant told Wells he and Perry had argued in a vehicle on their way back to the house; Perry demanded money from appellant; appellant tried to calm Perry down; Perry jumped on appellant's back and tried to reach for cash in appellant's back pocket, causing appellant to fall onto the bed.  Appellant told Wells he shot Perry because Perry threatened to stab him with a pair of scissors.

*Appellant's Videotaped Statements to Detectives*

{¶ 10}  Appellant made a videotaped statement to law enforcement which was shown to the jury as appellee's Exhibits 23-A and 23-B.  Appellant stated that he and Perry were related and had known each other for a long time.  Perry was from Detroit but he would often come to Canton on a bus and stayed with appellant.  Appellant said Perry sold weed to make a living and appellant tried to "help him out," but Perry "acted like appellant owed him something."  On the day of the murder, he and Perry intended to travel to Akron to buy marijuana for personal use.  Neither man had a driver's license, so appellant asked an acquaintance, Bridgette Hall, to drive them in her car.

{¶ 11}  Hall drove appellant and Perry to a residence in Akron.  Appellant told police this was Perry's "connection" and he didn't know the people involved, but the person Perry wanted to see did not show up.  Hall briefly returned to pick the two up, but left again when they weren't ready to leave.  Hall did not return for several hours, which angered Perry.  When Hall finally returned, Perry was agitated and "talking crazy" to her, to the extent that she stopped the car at a friend's house, got out, and refused to accompany the men any further.  Appellant proceeded to drive Hall's car back to the Canton residence, with Perry, trying to calm him down.

{¶ 12} Appellant said that upon their return to the residence, Trammel let them in, they proceeded to the bedroom, and appellant asked Trammel to leave the room so he could talk to Perry. Perry, though, knew appellant had $2700 on him that he had intended to buy "weed" with. Perry told appellant to give him the money and appellant refused. Appellant said Perry "rushed" him and the two "tussled" back and forth, with Perry attempting to reach into appellant's back pants pocket to grab the money. At some point Perry was on top of appellant on the bed and appellant was able to reach between the mattress and headboard where his handgun was hidden. Appellant said he grabbed the gun and "cocked" it, and Perry grabbed a pair of scissors and threatened to stab him with them.

{¶ 13} Appellant said Perry stood in front of the only way out of the bedroom, a single doorway, with the scissors in his hand. Appellant said he started shooting when Perry threatened him with the scissors, but aimed low because he only wanted to get Perry away from him and did not want to kill him. Appellant said he opened the bedroom door and told Hartsel to call 911.

*Physical Evidence*

{¶ 14} Appellant was found to have $2630.75 in cash in his back shorts pocket. He had a superficial cut on his left hand and scrapes on his legs which he said were from mosquito bites. Police collected a D.N.A. standard and a gunshot residue test from appellant, which ultimately indicated he had recently fired a gun.

{¶ 15} At the residence, police collected a .40 caliber Smith and Wesson semiautomatic firearm with one round in the chamber and a magazine for the firearm containing 7 rounds. Four spent shell casings were found in the bedroom. Police also found one pair of scissors on top of a dresser under some books and a second pair of scissors on the floor concealed under an article of clothing. The latter pair of scissors were silver in color with gold handles.

{¶ 16} From the coroner, police collected a bullet found in Perry's body and his clothing.

{¶ 17} The autopsy revealed four entrance wounds. A wound referred to at trial as "wound six" (based upon the autopsy diagram) was to the victim's left side. The bullet traveled through Perry's body and exited on the right. Due to this injury, two liters of fluid blood entered Perry's abdominal cavity, causing him to "bleed out." This wound alone would have been fatal.

{¶ 18} A second gunshot wound, referred to at trial as "wound seven," entered Perry's abdomen and the bullet was found lodged in his spine.

This wound could have eventually proven fatal and would also have potentially caused neurological issues and paralysis.

{¶ 19} The remaining gunshot wounds, including a shot to the victim's scrotum, would not have proven fatal.

{¶ 20} Both pairs of scissors were examined for D.N.A. Appellant told police Perry threatened him with a heavy pair of scissors with gold handles. The pair found on the dresser yielded a mixture of D.N.A. from more than one person, but the criminalist was unable to include or exclude appellant or Perry due to the size of the sample. The gold-handled scissors contained appellant's D.N.A. on the blades. The handles had a mixture of D.N.A. which was not enough for inclusion although Perry was excluded as a contributor.

*Indictment, Trial, and Conviction*

{¶ 21} Appellant was charged by indictment with one count of murder pursuant to R.C. 2903.02(B), a felony of the first degree [Count I], and one count of having weapons while under disability pursuant to R.C. 2923.13(A)(3), a felony of the third degree [Count II]. Count I was accompanied by a firearm specification pursuant to R.C. 2923.13(A)(3) [*sic*[8]].

{¶ 22} Appellant entered pleas of not guilty and waived his right to trial by jury upon Count II. The matter proceeded to jury trial upon Count I, murder, and the firearm specification. Appellant was found guilty as charged and sentenced to an aggregate prison term of 20 years to life.

*State v. Adams,* 5th Dist. Stark No. 2016 CA00106, 2017-Ohio-1145.

## B.    AEDPA Standard

AEDPA governs Adams' petition for writ of habeas corpus. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Murphy v. Ohio,* 551 F.3d 485, 493 (6th Cir. 2009). AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau,* 538 U.S. 202, 206 (2003) (quoting *Williams v. Adams,* 529

---

[8] The firearm specification was filed under Ohio Rev. Code § 2941.145.

9

U.S. 420, 436 (2000)).  AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall,* 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when

the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Adams*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen,* 558 U.S. 290, 301 (2010)).

The Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under de novo review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan,* 550

11

U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

### C.     Ground One

Adams' Ground One claim asserts that his convictions were against the manifest weight of the evidence. Warden Clipper argues that Ground One is not cognizable and lacks merit. It is well settled that claims regarding the manifest weight of the evidence are grounded in state law and are not cognizable on federal habeas review. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). The state court of appeals considered this argument and affirmed the trial court's conviction. Adams concedes that Ground One of his petition is not cognizable. ECF Doc. 7 at 9.

Because *pro se* manifest weight claims such as the one asserted in Adams' Ground One claim can sometimes be construed as an insufficiency of the evidence claim, I include the following analysis. Federal habeas review *is* available for insufficient evidence arguments. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). States have the power to determine the elements of criminal offenses, *See Engle v. Isaac*,

456 U.S. 107 (1982); *Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states from convicting "without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.  (Emphasis in original).  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence decision, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to a sufficiency claim, federal habeas review requires deference at two levels.  "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis.  First, we must ask whether the evidence itself was sufficient to convict under *Jackson*.  The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis,* 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

13

In considering Adams' manifest weight argument, the state court of appeals reviewed the record for both manifest weight and sufficiency of the evidence, concluding:

> {¶ 35} Appellant argues his convictions are against the manifest weight and sufficiency of the evidence because he acted in self-defense. "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray * * * [citations omitted]; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force * * * [citations omitted]; and (3) the slayer must not have violated any duty to retreat or avoid the danger,  *State v. Peacock,* 40 Ohio St. 333, 334 (1883); *Graham v. State,* 98 Ohio St. 77, 79 [120 N.E. 232, 16 Ohio L. Rep. 10] (1918).'" *State v. Robbins,* 58 Ohio St.2d 74, 79-80, 388 N.E.2d 755 (1979), quoting *State v. Melchior,* 56 Ohio St.2d 15, 381 N.E.2d 195 (1978).

> {¶ 36} Appellant argues the evidence at trial supports his claims that he was assaulted by Perry first, the two struggled, and he had a bona fide belief his life was in imminent danger due to Perry's threats with the scissors.  Appellee responds that the affirmative defense of self-defense is not available to appellant because, as the jury was instructed, "[i]f the defendant used more force than was reasonably necessary and if the force used is greatly disproportionate to the apparent danger, then the defense of self-defense is not available." (T. III, 97).

> {¶ 37} The jury could have reasonably rejected appellant's self-serving explanation of events describing Perry as the aggressor.  Appellee's evidence was undisputed at trial and revealed that appellant told a number of conflicting stories about events leading to the shooting, only eventually concluding that Perry threatened his life with scissors.  The jury could have reasonably believed appellant was at fault in creating the situation leading to the murder, or that appellant did not have a bona-fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in shooting Perry four times.

> {¶ 38} In reviewing the evidence in a light most favorable to appellee, we find any rational trier of fact could find appellant guilty of the essential elements of murder with a firearms specification beyond a reasonable doubt.  Thus, there exists sufficient evidence to sustain appellant's conviction upon Count I and the accompanying specification.  Further, upon our review of the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses and in resolving conflicts in the evidence, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice in convicting appellant.  His first assignment of error is thus overruled.

*State v. Adams,* 5th Dist. Stark No. 2016 CA00106, 2017-Ohio-1145.

Adams was convicted of one count of murder pursuant to Ohio Rev. Code § 2903.02(B), which required the state to prove Adams caused Perry's death as a proximate result of committing or attempting to commit an offense of violence that is a felony of the first or second degree. In Adams' case, the underlying offense was felonious assault under Ohio Rev. Code. § 2903.11(A)(1) and/or (A)(2), which state, respectively: "No person shall knowingly [c]ause serious physical harm to another * * *, or [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

Adams argued his convictions were against the manifest weight of the evidence because he acted in self-defense. But, as found by the Ohio Court of Appeals, "any rational trier of fact" could have reasonably found Adams guilty of murder and believed Adams was at fault in creating the situation leading to the murder or that he did not have a bona-fide belief that he was in imminent danger of death or great bodily harm. *State v. Adams,* 2017-Ohio-1145 at ¶¶ 37-38. I do not disagree with the Ohio Court of Appeals' findings. But, even if I did, I cannot say that the state court was "objectively unreasonable" in concluding that a rational trier of fact could find Adams guilty beyond a reasonable doubt. There was sufficient evidence produced at trial to show beyond a reasonable doubt that Adams caused Perry's death as a result of committing a felonious assault and that he was not acting in self-defense. Thus, the state courts were not unreasonable in arriving at the conclusion that Adams was guilty beyond a reasonable doubt on the evidence presented. Adams' Ground One claim should be dismissed because it raises only a noncognizable manifest weight of the evidence claim. Should the Court construe it as an evidence sufficiency challenge, it should be dismissed for lack of merit.

### D.  Ground Two

#### 1.  Procedural Default

Adams' Ground Two claim asserts that the trial court provided erroneous jury instructions.  Specifically, Adams argues that the trial court erred by instructing the jury that he had a duty to retreat as a part of its self-defense instruction; and should have instructed the jury that Adams had no duty to retreat because he was in his home.  The Ohio Court of Appeals found that Adams did not object to the jury instructions at trial, reviewed his assignment of error for plain error, and determined that although Adams had no duty to retreat, the error was harmless. *State v. Adams,* 5th Dist. Stark No. 2016 CA00106, 2017-Ohio-1145, ¶ ¶ 52-54.

Because Adams did not contemporaneously object to the jury instructions and the Ohio Court of Appeals only reviewed the claim for plain error, Warden Clipper argues that Ground Two is procedurally defaulted.  Clipper contends that the state court found that Ohio's contemporaneous objection rule barred any review other than plain error and that the claim was not reviewed on the merits by the Ohio Court of Appeals.  ECF Doc. 6 at 13.

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition."  *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a

pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

There is a second type of procedural default that is related to but "distinct" from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim in the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining procedural default, the federal court examines the last-explained state court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of the rule must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

An initial finding that a claim has been procedurally defaulted does not end the court's analysis of the issue. In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit

outlined the now-familiar evaluation district courts must make when the state argues that a

habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule:

> First, the federal court must determine whether there is a state procedural rule that
> is applicable to the petitioner's claim and whether the petitioner failed to comply
> with that rule. Second, the federal court must determine whether the state courts
> actually enforced the state procedural sanction -- that is, whether the state courts
> actually based their decisions on the procedural rule. Third, the federal court
> must decide whether the state procedural rule is an adequate and independent state
> ground on which the state can rely to foreclose federal review of a federal
> constitutional claim. Fourth, if the federal court answers the first three questions
> in the affirmative, it would not review the petitioner's procedurally defaulted
> claim unless the petitioner can show cause for not following the procedural rule
> and that failure to review the claim would result in prejudice or a miscarriage of
> justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further

citations omitted).

In his direct appeal, Adams conceded that he failed to object to the jury instructions at

trial. *State v. Adams,* 2017-Ohio-1145 at ¶ 53. For that reason, the court of appeals only

reviewed this issue for plain error. *Id.* at ¶ 54. In *Scott v. Mitchell,* 209 F.3d 854 (6th Cir. 2000),

the Sixth Circuit held that Ohio's contemporaneous objection rule was an adequate and

independent state ground for a procedural default, despite subsequent plain error review. *Scott,*

209 F.3d at 873. And plain error review is not the equivalent of a review of an issue on the

merits sufficient to prevent a procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th

Cir. 2006). *See also Coleman*, 501 U.S. at 741. Thus, Adams' Ground Two claim is

procedurally defaulted and must be dismissed unless the default may be excused as explained

below.

A petitioner may overcome procedural default by demonstrating cause for the default and

actual prejudice that resulted from the alleged violation of federal law, or that there will be a

"fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750.

18

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*.

Adams argues that he failed to object to the jury instructions because he had ineffective assistance of counsel at trial.  ECF Doc. 7 at 9 and ECF Doc. 8.  In *Edwards v. Carpenter*, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000), the Supreme Court held that "cause" to excuse a procedural default could be established in certain circumstances by counsel's ineffectiveness in failing to preserve the claim for review in state court.  *Id*.  However, the ineffective assistance of counsel claim must first be exhausted in state court.  *Id*.  Adams raised this argument in his direct appeal in the Ohio Court of Appeals and in his memorandum in support of Ohio Supreme Court jurisdiction.  Accordingly, he exhausted the ineffective assistance of counsel claim for failing to object to the self-defense jury instructions.  He has cited a potential cause for his failure to object to the jury instructions at trial.

Next, we look at actual prejudice.  Demonstrating actual prejudice requires "showing that the trial was infected with constitutional error." *Franklin v. Anderson,* 434 F.3d 412, 417 (6th Cir. 2006) citing *United States v. Frady*, 456 U.S. 152, 169, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  Prejudice does not occur unless a petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different if the error had not occurred.  *Mason v. Mitchell,* 320 F.3d 604, 629 (6th Cir. 2003).  When there is strong evidence of petitioner's guilt and a lack of evidence to support petitioner's claim, actual prejudice has not been shown.  *Rust v. Zent,* 17 F.3d 155, 161-62 (6th Cir. 1994).  Furthermore, "habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome the procedural default; they must

present affirmative evidence or argument as to the precise cause and prejudice produced."
*Lundgren,* 440 F.3d at 763.

Adams argues that there is a "reasonable probability" that the jury rejected his self-defense because it was not given the proper jury instructions.  ECF Doc. 8.  And, though not cited by Adams, there is precedent for such a finding.  *See Berrier v. Egler,* 428 F. Supp. 750, 752 (E.D. Mich., 1976), citing *United States v. Buffa,* 527 F.2d 1164 (6th Cir. 1975), in which the Sixth Circuit held that an erroneous instruction may be the basis for a reversal of a conviction even when no objection was made at trial, if it constituted plain error.  Thus, to decide whether Adams was actually prejudiced by the trial court's jury instructions on self-defense, the question becomes whether the trial court's erroneous jury instruction was plain error and whether the outcome of the trial would have been different.

The Ohio Court of Appeals considered whether the error in the jury instructions was plain error and decided that it was not.  Quoting *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978), the court of appeals observed that an erroneous jury instruction "does not constitute plain error or defect under Crim. R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise."  The court found that, even with a proper jury instruction – which would have omitted any instruction that Adams had a duty to retreat – the outcome of the trial would not clearly have been otherwise, because it was reasonable for the jury to reject as not-credible, Adams' "self-serving" version of events:

> {¶ 36} Appellant argues the evidence at trial supports his claims that he was assaulted by Perry first, the two struggled, and he had a bona fide belief his life was in imminent danger due to Perry's threats with the scissors.  Appellee responds that the affirmative defense of self-defense is not available to appellant because, as the jury was instructed, "[i]f the defendant used more force than was reasonably necessary and if the force used is greatly disproportionate to the apparent danger, then the defense of self-defense is not available."  (T. III, 97).

20

{¶ 37} The jury could have reasonably rejected appellant's self-serving explanation of events describing Perry as the aggressor. Appellee's evidence was undisputed at trial and revealed that appellant told a number of conflicting stories about events leading to the shooting, only eventually concluding that Perry threatened his life with scissors. The jury could have reasonably believed appellant was at fault in creating the situation leading to the murder, or that appellant did not have a bona-fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in shooting Perry four times.

{¶ 38} In reviewing the evidence in a light most favorable to appellee, we find any rational trier of fact could find appellant guilty of the essential elements of murder with a firearms specification beyond a reasonable doubt. Thus, there exists sufficient evidence to sustain appellant's conviction upon Count I and the accompanying specification. Further, upon our review of the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses and in resolving conflicts in the evidence, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice in convicting appellant. His first assignment of error is thus overruled.

*State v. Adams,* 5th Dist. Stark No. 2016 CA00106, 2017-Ohio-1145.

The court of appeals also considered a portion of the self defense instruction that *was* properly given – that using excessive force to protect oneself would make the defense of self-defense unavailable – and concluded that it was unlikely the outcome of the trial would have been different: "[t]he physical evidence established appellant responded with four gunshots to repel the threat of a use of scissors. Therefore, the jury could have found self-defense is not available since the force used was greatly disproportionate to the apparent danger." *Id.* at ¶ 60. Given the findings by the Ohio Court of Appeals that Adams suffered no actual prejudice even though an erroneous jury instruction was given – a conclusion I find was reasonable – Adams cannot show that he was prejudiced by his trial counsel's failure to object to that instruction.[9] As

---

[9] This finding also disposes of any claim that Adams' received ineffective assistance of counsel based on his failure to object to the jury instructions. Because it was reasonable for the Ohio Court of Appeals to find that Adams was not prejudiced by the jury instructions, Adams cannot meet the second prong of *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) showing that his trial attorney's failure to object to the jury instructions prejudiced his defense.

a result, he cannot satisfy the prejudice element of the cause and prejudice standard.  Because of this, unless he can establish that a fundamental miscarriage of justice has occurred, Adams' procedural default of his Ground Two claim cannot be excused.

Procedural default may also be excused upon a showing that failure to consider the petitioner's claims will result in a fundamental miscarriage of justice.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren*, 440 F.3d at 764 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The absence of new evidence alone dooms Adams' actual innocence/manifest injustice argument.  *Schlup*, 513 U.S. at 315: "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."

Adams does not argue that he is innocent of killing Alondo Perry.  Rather, he argues that his killing of Perry should be excused because he acted in self-defense.  *See White v. Arn*, 788 F.2d 338, 334-335, (6th Cir. 1986) ("When a defendant asserts the defense of self-defense in a murder trial, the defendant does not dispute or negate the elements of 'purposely' or 'cause the death of another.'  Rather, the defendant solely seeks to establish the elements of self-defense, which are unrelated to the elements of murder.")  *See also, Isaac v. Engle*, 646 F.2d 1129, 1139 (6th Cir. 1980) (*en banc*) (Lively, J., dissenting), rev'd., 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) (The defense of self-defense "admits the facts claimed by the prosecution to establish an offense but relies on the existence of a separate set of facts or circumstances which

the law recognizes as an excuse. When established, this excuse exempts the defendant from liability.") As already discussed, the jury most likely would have rejected Adams' self-defense argument even if they had been instructed that he had no duty to retreat. Adams has not produced new evidence establishing a more complete basis for arguing his actual innocence based on self-defense.

By failing to contemporaneously object to the jury instructions, Adams waived his ability to do so. The Ohio Court of Appeals recognized this failure, enforced the procedural rule, and only reviewed Adams' argument for plain error. The court of appeals concluded that even though the jury should not have been instructed that Adams had a duty to retreat, the outcome of Adams' trial would probably not have been different had the correct instruction been given, because of the questionable credibility of Adams' version of events and because he used a gun to defend against an alleged scissors attack. I agree. Adams has failed to show prejudice sufficient to excuse the procedural default of his Ground Two claim. Nor has he shown that he was actually innocent. I recommend that Ground Two of Adams' petition be dismissed as procedurally defaulted.

### 2.  Merits Review

Though not necessary given the procedural default analysis above, in order to be of greatest assistance to the court, I will analyze the merits of Adams' Ground Two claim. Federal courts considering habeas petitions are not required to reach a final conclusion on a procedural default issue before addressing the merits. *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003); *Bales v. Bell,* 788 F.3d 568, 573 (6th Cir. 2015).

Warden Clipper also argues that Ground Two fails on the merits. "On habeas review, errors on instructions are not reviewable unless they deprive a defendant of constitutional due process." *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000), cert. denied, 533 U.S. 941, 150 L.

Ed. 2d 739, 121 S. Ct. 2577.  The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle v. McGuire,* 502 U.S. 62, 72, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 38 L. Ed. 2d 368, 94 S. Ct. 396 (1973)).  Here, this question has already been answered in the negative.  As discussed above, the outcome of the trial would not likely have been different had the jury been instructed on the absence of a duty to retreat, because the jury had at least two separate grounds for rejecting the defense: the lack of credibility of Adams' version of events and his use of excessive, deadly force to repel an alleged attack with a pair of scissors.  And, as discussed above, the Ohio Court of Appeals also found – and I concur – that there was an evidentiary basis for concluding that Adams had played a part in precipitating the incident with Perry.  *See State v. Adams,* 2017-Ohio-1145 at ¶ 37, page 14, *supra.*

Adams' traverse offers the belated argument that the jury instructions on self-defense improperly shifted the burden of proof to defendant.  ECF Doc. 7 at 11-13.  Initially, I note that Adams' petition never asserted that his constitutional rights were violated when he was required to prove self-defense by a preponderance of the evidence.  Similarly, his petition also did not assert the related argument that requiring him to prove the defense of self-defense effectively required him to disprove an element of the state's charged offense.  Likewise, Adams never made this argument in his direct appeal, in his memorandum in support of Ohio Supreme Court jurisdiction over his direct appeal or in his petition for post-conviction relief.  We need not consider that claim in the first instance upon habeas review.

Nevertheless, the claim is easily disposed of on the merits.  First, Adams relies, in part, upon the Ohio Supreme Court decision in *State v. Robinson*, 47 Ohio St.2d 103 (1976), for the proposition that "the prosecutor had to disprove self-defense beyond a reasonable doubt."  ECF Doc. 7 at 10.  In 1978, after *Robinson* was decided, the Ohio legislature amended Ohio Rev.

24

Code § 2901.05 to make it clear that the accused bore the burden of proof on the affirmative

defense of self-defense: "The burden of going forward with the evidence of an affirmative

defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense,

is upon the accused."  Thus, as of the time Adams' case was decided, *Robinson* was no longer

good law.[10]  In *Martin v. Ohio*, 480 U.S. 228 (1987), the United States Supreme Court ruled that

Ohio Rev. Code § 2901.05(A) did not shift to the defendant the state's burden of proving each

and every element of an offense beyond a reasonable doubt, which would have violated the Due

Process Clause per the Court's holding in *In re Winship*, 397 U.S. 358, 364 (1970).  The effect of

the Supreme Court's holding in *Martin* was that the state had no burden to disprove that a

defendant was acting in self-defense in order to convict him for murder, and that it does not

violate due process to force a criminal defendant to prove an affirmative defense such as self-

defense by a preponderance of the evidence.  The U.S. Supreme Court's ruling upheld the Ohio

Supreme Court's ruling on the constitutionality of § 2901.05(A). *State v. Martin*, 21 Ohio St.3d

91, 488 N.E.2d 166 (1986).

In *White v. Arn*, 788 F.2d 338, 347 (6th Cir. 1986), cert. denied, 480 U.S. 917 (1987) the

Sixth Circuit rejected the exact arguments Adams asserts here.  The Sixth Circuit held that

"placing the burden of proving self-defense by a preponderance of the evidence upon [the

defendant] did not violate the Due Process Clause of the Fourteenth Amendment because the

state was still required to prove the elements of murder beyond a reasonable doubt.  *Id.*

---

[10] Effective March 28, 2019, the Ohio General Assembly amended Ohio Rev. Code § 2901.05 to
expressly place the burden of disproving the affirmative defense of self-defense upon the state once an
accused produces evidence that "tends to support that the accused used…force in self-defense."  Simply
because the General Assembly has now shifted the burden of disproving self-defense to the state does not
mean the former statute was unconstitutional.  *See State v. Krug,* 11th Dist. No. 2018-L-056, 2019-Ohio-
926, 2019 Ohio App. LEXIS 982; *See also, Martin v. Ohio, 480 U.S. 228, 235-236, 107 S. Ct. 1098, 94
L. Ed. 2d 267* (1987).  Nor can Adams benefit from the revised law.  Absent an express indication that the
General Assembly intended that the revised statute to be applied retroactively it does not affect cases that
are already concluded.

Although Adams correctly points out that the Ohio trial court erroneously instructed the jury that he had a duty to retreat, he has not identified any constitutional law violation or any other violation of clearly established federal law that occurred when the Ohio Court of Appeals found he was not prejudiced by the erroneous instruction.  Further, under AEDPA, determinations of factual issues by a state court are presumed correct unless the habeas petitioner rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Here, the jury rejected Adams' self-defense claim; and the court of appeals found two grounds independent of any duty to retreat issue to support that decision: the questionable credibility of Adams' version of events, and his use of excessive force.  Because Adams cannot show that any state court adjudication of his claim concerning the self-defense jury instruction meets the AEDPA standard for issuance of a writ of habeas corpus, I recommend his Ground Two claim be dismissed on the merits should the court elect to dispose of the claim on non-procedural grounds.

### E.    Ground Three

Adams' Ground Three claim asserts prosecutorial misconduct deprived him of a fair trial based on comments made by the prosecutor during rebuttal closing argument.  Adams argues that the prosecutor 1) improperly told the jury that Adams was not crying or upset when he gave his statement to law enforcement; and 2) misled the jury by stating that the first shot taken by Adams was the fatal shot to the victim.  ECF Doc. 7 at 13-14.  Warden Clipper contends that Ground Three lacks merit.  Clipper argues that the Ohio Court of Appeals identified the correct standard and properly determined that the trial court did not err because the prosecutor's statements did not affect the fundamental fairness at trial.  ECF Doc. 6 at 19.

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct.

26

1868, 40 L. Ed. 2d 431 (1974).  "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986).  The reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).  A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial.  *United States v. Young*, 470 U.S. 1, 11-12, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985).  "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 2006 WL 589356, *19 (6th Cir. March 13, 2006), quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski,* 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper.  *Id.* at 452.  Upon a finding of impropriety, the court then determines whether the statements were flagrant.  *Id.*  The Court considers four factors in determining flagrancy: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.  *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003); *Macias*, 291 F.3d at 452.  *See also Darden*, 477 U.S. at 182; *Young*, 470 U.S. at 12; *Donnelly*, 416 U.S. at 646-647.  Other relevant factors include whether the prosecutor manipulated or misstated the evidence, *see*

27

*Darden,* 477 U.S. at 182; *Berger v. United States,* 295 U.S. 78, 84-85, 55 S. Ct. 629, 79 L. Ed. 1314 (1935), overruled on other grounds by *Stirone v. United States,* 361 U.S. 212, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960), or whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.

Adams objects to the following comments made by the prosecutor during rebuttal:

Prosecutor: * * * And in his statement he was never upset, he was not crying. The only -

Defense Counsel: Objection.

Prosecutor: - - thing I saw him do - -

Defense Counsel: The State was not present during - -

The Court: Overruled. You, you can interpret the, the evidence. You can interpret the evidence. What matters is how you interpret the evidence, ladies and gentlemen. Both – what, what both counsel say is not evidence. You can interpret it yourselves. Overruled.

Prosecutor: He was not upset, he was not crying - - you can watch the video - - there are no tears. I did see him yawn; you can watch that on the video, too. * * *

* * *

Prosecutor: * * * From the testimony you have this room (indicating). And from the Defendant's own statement he was over here (indicating) and the victim was over here (indicating). He's across the room. The Defendant has to (indicating) chamber a round before he shoots him. He's - - the Defendants by the windows, he's by the door. All the shots are here (indicating) and in the back, right. No contact shot. There's no struggle at this point. They're across the room from each other. Even the maximum muzzle distances puts an arm length, a gun and then at least one more foot, or up to four. And the victim it's his left side; he's not even facing the Defendant anymore.

So he's shot in the side and then in the back of the legs and then in the genitals. Now, I put it in that order for a reason. Clearly the two in the back of the legs, although the - - although Doctor Robinson could not testify as to the order, she testified to the direction and they're going up, they're going up the right leg. The only way that's possible is if Alondo Perry is either down or falling. It's just not possible. So those aren't the first shot.

And then you have the shot to the genitals. They are left to right and down. And if you recall the testimony, it was left to right and severely down, it's going down. You've all watched TV. You've all been in a situation to see this happen. Any time anybody even goes near a male's genitalia he's like this (indicating). Why aren't Alondo Perry's hands shot? You know why? Because that wasn't the first shot. The first shot is the fatal shot

here (indicating) and here (indicating) because they're also straight across; Alondo's still standing and not down.

Defense Counsel:  Objection.

The Court:  Overruled.  This is closing argument.

Prosecutor:  Back (indicating), front (indicating).  So I submit to you that he's shot in the side and he starts to go down and then the Defendant continues to shoot him in the legs, the back of the legs, and then when he's down comes over him and, remember, he's close, closer now, shoots him in the genitals cause there's no injury to his hands.  No man's going to get shot in the genitals without some kind of defensive wound to the hands.  * * *

ECF Doc. 6-1 at 933-937.

The Ohio Court of Appeals considered this claim as follows:

> {¶ 48}  The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S. Ct. 591, 112 L. Ed. 2d 596 (1990).  In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct. 2464, 91 L.Ed.2d 144 (1986).  Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott*, *supra*, 51 Ohio St.3d at 166, 555 N.E.2d 293.

> {¶ 49}  Appellant argues appellee made improper comments in closing argument which prejudicially affected his right to a fair trial.  Specifically, appellant points to appellee's comments that he was not crying or upset when he spoke to law enforcement and that the first shot fired was the fatal shot.  We have reviewed the record of each side's closing argument, and appellee's rebuttal, and agree with appellee that both statements were made in response to appellant's closing argument.  Appellant fails to point to any improper statement by the prosecutor which is not arguably supported by appellee's evidence.  *State v. Meeks,* 2015-Ohio-1527, 34 N.E.3d 382, ¶ 103 (5th Dist.), appeal not allowed, 143 Ohio St.3d 1543, 2015-Ohio-4633, 40 N.E.3d 1180.  In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *Id.,* citing *State v. Lott,* 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

> {¶ 50}  Finally, appellant has failed to demonstrate prejudice based upon either of the prosecutor's comments he cites.  "Appellant does not identify

> any connection between the alleged misconduct and his conviction. * * *
> *. [T]he trial court clearly believed, and the record reflects, that the
> prosecutor's theory of the case was relevant as to certain issues.
> Appellant's pure speculation as to how the jury might overreact to this
> evidence is not the kind of 'but for' argument that will support a finding of
> misconduct."  *State v. Carmichael,* 7th Dist. Columbiana No. 11 CO 23,
> 2013-Ohio-2178, 2013 WL 2325849, ¶ 14.  None of the evidence or
> arguments cited by appellant are improper, and appellant cannot
> demonstrate, even if they were improper, "but for" the evidence and
> arguments he would not have been convicted.  Having failed to
> demonstrate a causal connection between the alleged misconduct and his
> resulting convictions, appellant cannot demonstrate reversible error.

*State v. Adams,* 5th Dist. Stark No. 2016 CA00106, 2017-Ohio-1145.

The trial court and Ohio Court of Appeals found that the prosecutor's comments were not improper.  I concur.  The prosecutor stated that she did not think that Adams was acting sad when he made his video statement to police.  The jurors watched the video of this statement and were free to form their own opinion about whether he was upset or not.  The trial court, though overruling the objection, instructed the jury that they were to interpret the evidence themselves and reinforced that the prosecutor's argument was not evidence.

The prosecutor also submitted to the jury her theory of the order of the gunshot wounds based on Doctor Robinson's testimony.  The prosecutor admitted that Doctor Robinson could not determine the order of the shots.  Nonetheless, based on the evidence, the prosecutor provided a theory of when the fatal shot was fired.  This was based on reasonable inferences from the evidence and was permissible. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000).  I agree with the Ohio Court of Appeals that there was no prosecutorial misconduct in these statements.

Because the prosecutor's statements were not improper, it is not necessary to consider whether they were flagrant.  But if considered, the Sixth Circuit's factors would weigh against a finding of flagrancy.  The prosecutor's statements were unlikely to prejudice the jury because she qualified them – stating that the jurors could watch the video for themselves and that Dr.

Robinson could not opine on the order of the gunshot wounds. The remarks were isolated to the rebuttal closing argument and responsive to defense counsel's arguments. And, for at least one of the statements, the trial court offered a curative instruction, even though it overruled defendant's objection. S*ee Darden,* 477 U.S. at 182. These factors would weigh against a finding of flagrancy.

It is apparent that the Ohio courts applied appropriate legal standards in overruling defendant's objections at trial and in rejecting his prosecutorial misconduct assignment of error on direct appeal. We are required to defer to the Ohio courts' legal determination of this issue unless Adams can show that the state courts' analysis was contrary to or an unreasonable application of clearly established federal law. Alternatively, Adams can try to show that the Ohio courts made unreasonable determinations of the facts on the record before the court. Adams has failed to show that any decision of the Ohio courts ran afoul of applicable Supreme Court precedent or constituted an unreasonable determination of the facts. Our analysis ends with that conclusion. Even if we were to independently consider the issue, we must find that the prosecutor's comments during rebuttal were not improper or flagrant. They did not permeate Adams' trial and/or prejudice the outcome. He was not denied a fair trial by the prosecutor's rebuttal closing argument. Adams' Ground Three claim should be dismissed for lack of merit.

### F.    Ground Four

Adams' Ground Four claim asserts that his *Sixth Amendment* right to effective assistance of counsel was violated because his appellate counsel did not notify him of post-conviction rights. ECF Doc. 1 at 11. Warden Clipper argues that Adams does not cite any clearly established Supreme Court precedent that makes appellate counsel responsible to keep the appellant apprised of collateral rights of appeal. Clipper also argues that there is no right to counsel in post-conviction actions. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S. Ct. 1990,

1992, 95 L. Ed. 2d 539, 544 (1987); *Murray v. Gairratano,* 492 U.S. 1, 4 *, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989).  Moreover, Adams filed a post-conviction petition suggesting that he was aware of his post-conviction rights.

In his traverse, Adams concedes that the issue raised in his Ground Four claim did not have a bearing on his conviction.  ECF Doc. 7 at 14.  He appears to abandon this claim.  Because Adams has not shown that he was denied effective assistance of counsel or that any decision of an Ohio court was contrary to or an unreasonable application of any clearly established Supreme Court precedent, I recommend that Adams' Ground Four claim be dismissed for lack of merit.

## V.      Recommendation Regarding Certificate of Appealability

### A.      Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'"  *Hicks v. Johnson,* 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson,* 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel,* 529 U.S. 473, 483-484 (2000).  The

statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.   Analysis

Adams concedes that his Ground One claim asserted only a noncognizable manifest weight of the evidence claim.  Ground Two was procedurally defaulted.  Even if reviewed on the merits, Ground One and Ground Two would fail on the merits.  Ground Three and Ground Four lack merit.  Adams has not shown any unreasonable applications of clearly established federal law or any unreasonable determinations of facts.  Habeas relief is not available for the issues identified in Adams' petition.  This would not be debatable among jurists of reason, and I recommend that no certificate of appealability issue in this case.

## VI.   Recommendations

Adams concedes that his Ground One and Four claims should be dismissed.  Because Grounds One through Four of Adams' petition lack merit; Ground One fails to present any issue cognizable on habeas review; and Ground Two is procedurally defaulted,  I recommend that the court DISMISS all of Adams' grounds for relief under 28 U.S.C. § 2254 and DENY his petition

for writ of habeas corpus.  I further recommend that Adams not be granted a certificate of appealability.


Dated: August 19, 2019

Thomas M. Parker
United States Magistrate Judge

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).