PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE LATIFF ADAMS, | ) | CASE NO. 5:17-CV-2579 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| CHAE HARRIS, Warden, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Respondent. | ) | [Resolving ECF Nos. 11, 12, 13] |

Pending before the Court is *pro se* Petitioner Jermaine L. Adams' Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 alleging four grounds for habeas relief. ECF No. 1. The case was referred to Magistrate Judge Thomas M. Parker for a Report and Recommendation pursuant to 28 U.S.C. § 636 and L.R. 72.2(b)(2). The magistrate judge issued a Report recommending the Court dismiss the habeas petition. ECF No. 11. Petitioner filed objections to the magistrate judge's Report and Recommendation. ECF No. 13.

For the following reasons, Petitioner's objections are overruled, the Report and Recommendation is adopted, and the petition is dismissed.

## I. Background[1]

### A. Conviction and Direct Appeal

On February 5, 2016, a jury in the Stark County Court of Common Pleas found Petitioner guilty of one count of murder with a three-year firearm specification and one count of having weapons while under disability. ECF No. 6-1 at PageID #: 59. The trial court sentenced Petitioner to an indefinite prison term of 20 years to life. *Id*. at PageID #: 61.

Petitioner, through appellate counsel, filed a timely notice of appeal with Ohio's Fifth District Court of Appeals. *Id*. at PageID #: 69. On appeal, Petitioner made six assignments of error. ECF No. 11 at PageID #: 1045. On March 27, 2017, the appellate court affirmed the trial court's decision overruling all assignments of error. ECF No. 6-1 at PageID #: 170. Petitioner filed a timely notice of appeal with the Ohio Supreme Court. *Id*. at PageID #: 160. On September 13, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *Id* at PageID #: 194.

On direct appeal, Ohio's Fifth District Court of Appeals established the factual background of Petitioner's trial and convictions.

> {¶ 2} This case arose on August 16, 2015, when victim Alondo Perry was shot four times by appellant, his housemate. Perry died as a result of his injuries.
>
> {¶ 3} Appellant, his girlfriend Beth Hartsel, and their child lived in a house on 23rd Street Northwest in Canton. Also living in the house were

---

[1] According to the Ohio Department of Rehabilitation & Correction website (https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A681065 (last visited May 29, 2020)), Petitioner is currently confined at the Lebanon Correctional Institution. The Warden of that institution, Chae Harris, has been substituted for Kimberly Clipper.

Alondo Perry, Jessica Smith, and Carlton Trammel. Smith's two young children were sometimes present as well.

Carlton Trammel

{¶ 4} On August 16, Trammel was sitting in a chair in appellant's bedroom watching television, as he was accustomed to do. Appellant and Perry arrived at the house and knocked on the front door because they did not have a key. Trammel let them in and all three went into appellant's bedroom to watch television. Shortly thereafter Perry took a call on his cell phone and briefly left the room. Upon his return, appellant asked Trammel to leave the room so he and Perry could talk. Trammel grabbed a cigarette and left the house through a back door. He walked across the backyard toward a friend's house when he heard a muffled sound like "chch-ch" and someone screamed. Trammel kept walking and "[tried] to think about nothing." T. 307. He did not return to the house that night.

{¶ 5} Trammel testified that appellant and Perry were not agitated or fighting when they came into the house or while they were in the bedroom. Trammel was unaware of any problem between the two at all and did not become aware of the murder until the next day.

Jessica Smith

{¶ 6} Jessica Smith was arrested on a material witness warrant and reluctantly testified at trial. Smith lived at the house intermittently and was present on the evening of August 16, 2015. She heard appellant and Perry come home and go into appellant's bedroom. Smith was in a bathroom in the back of the house bathing one of her children when Beth Hartsel came into the bathroom yelling and locked the door. Smith and Hartsel gathered the children and led them out of the house.

{¶ 7} As they left, Smith saw Perry's body on the floor. Appellant was sitting on the steps with a gun in his hand and Smith asked him what happened. Appellant told her someone tried to rob Perry and told her to call 911. Smith called 911 and said an ambulance was needed. Smith, Hartsel, and the children left the scene.

Conflicting Stories to E.M.T.s and Police

{¶ 8} E.M.T.s arrived on the scene first, without police, because the 911 caller requested medical attention and hung up. First responder Michael

Rodriques arrived and found a man standing on the front porch. The man told him someone inside the house needed a medic. Rodriques asked, "What's wrong with him?" and the man responded "I shot him." In response to Rodriques' questions, the man said the victim broke into the house and they struggled over a gun. Rodriques entered the house and found Perry on the floor, already deceased. Rodriques called police and started C.P.R. Appellant sat on the couch and was present when police arrived.

{¶ 9} Ptl. Christopher Wells was among the first police officers on the scene. He found appellant sitting in a chair, sweating profusely and breathing heavily. Appellant told Wells he and Perry had argued in a vehicle on their way back to the house; Perry demanded money from appellant; appellant tried to calm Perry down; Perry jumped on appellant's back and tried to reach for cash in appellant's back pocket, causing appellant to fall onto the bed. Appellant told Wells he shot Perry because Perry threatened to stab him with a pair of scissors.

Appellant's Videotaped Statements to Detectives

{¶ 10} Appellant made a videotaped statement to law enforcement which was shown to the jury as appellee's Exhibits 23-A and 23-B. Appellant stated that he and Perry were related and had known each other for a long time. Perry was from Detroit but he would often come to Canton on a bus and stayed with appellant. Appellant said Perry sold weed to make a living and appellant tried to "help him out," but Perry "acted like appellant owed him something." On the day of the murder, he and Perry intended to travel to Akron to buy marijuana for personal use. Neither man had a driver's license, so appellant asked an acquaintance, Bridgette Hall, to drive them in her car.

{¶ 11} Hall drove appellant and Perry to a residence in Akron. Appellant told police this was Perry's "connection" and he didn't know the people involved, but the person Perry wanted to see did not show up. Hall briefly returned to pick the two up, but left again when they weren't ready to leave. Hall did not return for several hours, which angered Perry. When Hall finally returned, Perry was agitated and "talking crazy" to her, to the extent that she stopped the car at a friend's house, got out, and refused to accompany the men any further. Appellant proceeded to drive Hall's car back to the Canton residence, with Perry, trying to calm him down.

{¶ 12} Appellant said that upon their return to the residence, Trammel let

them in, they proceeded to the bedroom, and appellant asked Trammel to leave the room so he could talk to Perry. Perry, though, knew appellant had $2700 on him that he had intended to buy "weed" with. Perry told appellant to give him the money and appellant refused. Appellant said Perry "rushed" him and the two "tussled" back and forth, with Perry attempting to reach into appellant's back pants pocket to grab the money. At some point Perry was on top of appellant on the bed and appellant was able to reach between the mattress and headboard where his handgun was hidden. Appellant said he grabbed the gun and "cocked" it, and Perry grabbed a pair of scissors and threatened to stab him with them.

{¶ 13} Appellant said Perry stood in front of the only way out of the bedroom, a single doorway, with the scissors in his hand. Appellant said he started shooting when Perry threatened him with the scissors, but aimed low because he only wanted to get Perry away from him and did not want to kill him. Appellant said he opened the bedroom door and told Hartsel to call 911.

Physical Evidence

{¶ 14} Appellant was found to have $2630.75 in cash in his back shorts pocket. He had a superficial cut on his left hand and scrapes on his legs which he said were from mosquito bites. Police collected a D.N.A. standard and a gunshot residue test from appellant, which ultimately indicated he had recently fired a gun.

{¶ 15} At the residence, police collected a .40 caliber Smith and Wesson semiautomatic firearm with one round in the chamber and a magazine for the firearm containing 7 rounds. Four spent shell casings were found in the bedroom. Police also found one pair of scissors on top of a dresser under some books and a second pair of scissors on the floor concealed under an article of clothing. The latter pair of scissors were silver in color with gold handles.

{¶ 16} From the coroner, police collected a bullet found in Perry's body and his clothing.

{¶ 17} The autopsy revealed four entrance wounds. A wound referred to at trial as "wound six" (based upon the autopsy diagram) was to the victim's left side. The bullet traveled through Perry's body and exited on the right. Due to this injury, two liters of fluid blood entered Perry's abdominal cavity, causing him to "bleed out." This wound alone would

have been fatal.

{¶ 18} A second gunshot wound, referred to at trial as "wound seven," entered Perry's abdomen and the bullet was found lodged in his spine. This wound could have eventually proven fatal and would also have potentially caused neurological issues and paralysis.

{¶ 19} The remaining gunshot wounds, including a shot to the victim's scrotum, would not have proven fatal.

{¶ 20} Both pairs of scissors were examined for D.N.A. Appellant told police Perry threatened him with a heavy pair of scissors with gold handles. The pair found on the dresser yielded a mixture of D.N.A. from more than one person, but the criminalist was unable to include or exclude appellant or Perry due to the size of the sample. The gold-handled scissors contained appellant's D.N.A. on the blades. The handles had a mixture of D.N.A. which was not enough for inclusion although Perry was excluded as a contributor.

Indictment, Trial, and Conviction

{¶ 21} Appellant was charged by indictment with one count of murder pursuant to R.C. 2903.02(B), a felony of the first degree [Count I], and one count of having weapons while under disability pursuant to R.C. 2923.13(A)(3), a felony of the third degree [Count II]. Count I was accompanied by a firearm specification pursuant to R.C. 2923.13(A)(3) [ ].

{¶ 22} Appellant entered pleas of not guilty and waived his right to trial by jury upon Count II. The matter proceeded to jury trial upon Count I, murder, and the firearm specification. Appellant was found guilty as charged and sentenced to an aggregate prison term of 20 years to life.

ECF No. 6-1 at PageID #: 135-40.

**B. Post-Conviction Relief**

On April 24, 2017, Petitioner filed a *pro se* petition to set aside judgment of conviction on the ground he was denied effective assistance of counsel. *Id.* at PageID #: 195-97. On May 30, 2017, the trial court denied his post-conviction petition as barred by the doctrine of res

judicata. *Id*. at Page ID #: 207. Petitioner timely appealed the trial court's decision. *Id.* at PageID #: 211. On September 7, 2017, the Court of Appeals dismissed the case for failure to prosecute. *Id*. at PageID #: 213. Petitioner's subsequent delayed motion for reconsideration was denied. *Id*. at PageID #: 217. Petitioner did not pursue an appeal of this decision in the Ohio Supreme Court.

**C. Petition for Habeas Relief**

Petitioner, challenging his conviction, filed the instant habeas corpus petition on December 12, 2017, asserting four grounds for relief:

> **Ground One:** Petitioner's convictions are against the manifest weight of the evidence. The jury lost its way and convicted Petitioner when the record clearly shows that Petitioner was defending his personal safety.
>
> **Ground Two:** The trial court provided erroneous jury instructions. The trial court provided erroneous jury instructions to the jury, failing to give a duty to retreat instruction.
>
> **Ground Three:** The prosecutorial misconduct in this case denied Petitioner his right to a fair trial. The prosecutor testified to evidence not contained within the record and during the course of the trial, made statements of personal belief as to the alleged facts of the case.
>
> **Ground Four:** Petitioner was denied his right to effective assistance of appellate counsel. Appellate counsel for Petitioner failed to notify Petitioner of his post-conviction rights as well as the time frame(s) for said motions.

ECF No. 1 at PageID #: 5-11.

In his Traverse, Petitioner conceded that Grounds One and Four had no bearing on his conviction. ECF No. 7 at PageID #: 1023, 1028. In the Report and Recommendation, Magistrate

Judge Parker concluded that Petitioner's claims are either non-cognizable on habeas review, procedurally defaulted, or meritless. For those reasons, the magistrate judge recommended that the petition be dismissed in its entirety.[2] ECF No. 11 at PageID #: 1075.

In his objections to the Report and Recommendation, Petitioner objects only to Ground Two. ECF No. 13. Accordingly, the Court adopts the magistrate judge's recommendation that Grounds One, Four and Three be denied.[3] Only Ground Two will be considered.

## II. Standard of Review

When objections have been made to the magistrate judge's Report and Recommendation, the District Court standard of review is *de novo*. Fed. R. Civ. 72(b)(3). A district judge:

> must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*

## III. Law & Analysis

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus may not be granted unless the state court proceedings: (1) resulted in a decision that was contrary to, or involved an unreasonable

---

[2] The magistrate judge recommended that the Court deny the habeas petition on the following grounds, specifically: Ground One asserts only a noncognizable manifest weight of the evidence claim; Ground Two is procedurally defaulted; and Grounds Three and Four lack merit. ECF No. 11 at PageID #: 1075.

[3] The Federal Magistrates Act requires a district court to conduct de novo review only of those portions of the Report and Recommendation to which an objection has been properly made. 28 U.S.C. § 636(b)(1).

application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2); *see also* *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001).

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also* *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). Because state courts are the final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters. *See* *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also* *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) ("[A] violation of state law is not cognizable in federal habeas [ ] unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.").

**A. Objections to the Report and Recommendation**

Petitioner objects to the magistrate judge's recommendation that Ground Two be dismissed. ECF No. 13. He asserts the magistrate judge incorrectly used plain error review in assessing the trial court's erroneous jury instruction on self-defense.[4] *Id.* at PageID #: 1082. He

[4] Petitioner asserts in Ground Two that the Ohio trial court provided an erroneous jury instruction on self-defense. ECF No. 7 at PageID #: 1023. Petitioner submits that

(continued...)

also asserts that the magistrate judge incorrectly found Ground Two to be procedurally defaulted. *Id* at PageID #: 1083. Instead, Petitioner claims, the magistrate judge should have found both cause and prejudice were met–through his trial counsel's constitutional ineffectiveness–to excuse any procedural default. ECF No. 13 at PageID #: 1085.

**1. Plain Error Review**

Petitioner alleges the magistrate judge used the wrong standard of review to determine whether he was prejudiced by the trial court's erroneous jury instruction. ECF No. 13 at PageID #: 1082. Petitioner avers the erroneous jury instruction should have been subject to "harmless error" rather than "plain error" review. *Id*.

In Ohio, a criminal defendant must preserve each issue by timely objection in the trial court and present the issue to the Court of Appeals and Ohio Supreme Court. *State v. Long*, 372 N.E.2d 804, 808 (Ohio 1978) (finding failure to object to a jury instruction at trial, as required by Ohio's contemporaneous objection rule, forecloses appellate review of the instruction absent plain error). The Sixth Circuit has long held that Ohio's "contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review," and that "plain-error

[4](...continued)
the trial court erred in instructing the jury that he had a duty to retreat, and should have instructed the jury that he had no duty to retreat because he was in his own home at the time he killed the victim. *Id*. After reviewing the trial court record, the Ohio Court of Appeals found that Petitioner did not object to the jury instructions at trial, reviewed his assignment of error for plain error, and determined that although Petitioner had no duty to retreat, the error was harmless. ECF No. 6-1 at PageID #: 134; *State v. Adams*, 2017 WL 1162432 (Ohio Ct. App. Mar. 27, 2017).

review is not inconsistent with [ ] procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 649 (6th Cir. 2010) (citations omitted); *see also* *Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (recognizing Ohio's long-standing contemporaneous objection rule); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005).

In his direct appeal, Petitioner conceded to failing to object to the duty-to-retreat self-defense jury instruction at trial. ECF No. 6-1 at PageID #: 149. For that reason, the Ohio Court of Appeals reviewed the issue for "plain error," in accordance with state law. *See* *State v. Adams*, 2017 WL 1162432, at *7 (citing *State v. Long*, 372 N.E.2d 804, 808 (Ohio 1978)) (noting under Crim. R. 52(B), an erroneous jury instruction does not constitute a plain error or defect unless, "but for the error, the outcome of the trial clearly would have been otherwise."). Upon interrogation of the trial court record, the Ohio Court of Appeals found that the erroneous self-defense jury instructions did not constitute "plain error."[5] *Id*.

Because Petitioner did not object to the duty-to-retreat jury instruction at trial, the state trial court's error was appropriately reviewed under the "plain error" standard of review.

**2. Cause and Prejudice To Excuse The Procedural Default**

In the Report and Recommendation, the magistrate judge found that while Petitioner demonstrated cause for his failure to comply with Ohio's contemporaneous objection rule (with regard to the self-defense jury instruction), he failed to demonstrate actual prejudice required to

[5] The appellate court's finding turned on physical evidence presented to the jury, showing Petitioner fired four gunshots at the victim to repel the victim's threat of a use of scissors. *State v. Adams*, 2017 WL 1162432, at *7. The force Petitioner used against the victim-decedent was determined to be "greatly disproportionate to the apparent danger" posed. *Id*. at *8.

excuse the procedural default. ECF No. 11 at PageID #: 1065. Petitioner objects to the magistrate judge's finding, asserting he has shown both cause and actual prejudice. ECF No. 13 at PageID #: 1085.

In order to overcome the procedural default (for Petitioner's failure to object to the self-defense jury instruction at trial) Petitioner must demonstrate both "cause for the default" and "actual prejudice" from the alleged error of federal law. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To establish cause, Petitioner must demonstrate that an objective factor "external to the defense" impeded his efforts to comply with the state procedural rule. *Id*. Ineffective assistance of counsel can constitute "cause" if the claim was exhausted in state court. *Edwards v. Carpenter*, 529 U.S. 446, 450 (2000).

Petitioner's failure to comply with Ohio's contemporaneous objection rule was the fault of his trial attorney who failed to properly object to the jury instructions. ECF No. 6-1 at PageID #: 128-29. Because Petitioner exhausted his *Strickland* claim for counsel's conduct in state court,[6] he has established adequate cause for the procedural default. ECF No. 11 at PageID #: 1061.

Petitioner, however, fails to meet the "actual prejudice" prong of the cause and prejudice test. *Coleman*, 501 at 750. To establish actual prejudice, a habeas petitioner must show that the

[6] Petitioner properly exhausted his ineffective assistance of counsel claim in state courts, alleging his trial attorney failed to object to the duty-to-retreat instruction, leading to the procedural default. The Ohio Court of Appeals concluded that Adams was not prejudiced by counsel's failure to object to the jury instructions. *State v. Adams*, 2017 WL 1162432, at *7.

trial was "infected with constitutional error." *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015). An error in jury instructions alone is not a basis for habeas relief. *Scott v. Mitchell*, 209 F.3d 854, 875 (6th Cir. 2000). To warrant habeas relief, jury instructions must not only have been erroneous, "but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Id.* at 882. In analyzing actual prejudice under an ineffective assistance of counsel claim, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland v. Washington,* 466 U.S. 668, 694 (1984)).

The record does not demonstrate that counsel's failure to object to the jury instructions resulted in actual prejudice against Petitioner. The Court finds, as did the state appellate court, that even with a proper instruction omitting Petitioner's duty to retreat, the outcome of the trial would not clearly have been otherwise.

> In reviewing the evidence in a light most favorable to appellee, we find any rational trier of fact could find appellant guilty of the essential elements of murder with a firearms specification beyond a reasonable doubt. Thus, there exists sufficient evidence to sustain appellant's conviction upon Count I and the accompanying specification. Further, upon our review of the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses and in resolving conflicts in the evidence, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice in convicting appellant.

*State v. Adams*, 2017 WL 1162432, at *5

It was reasonable for the jury to reject Petitioner's version of events leading to the victim's death as non-credible. *State v. Adams*, 2017 WL 1162432, at *5. Furthermore, sufficient evidence existed from which reasonable jurors could have found Petitioner used excessive force against the victim, making the self-defense instruction unavailable. *Id.* at *8. Accordingly, Petitioner has not met the second prong of *Strickland* analysis by showing that counsel's failure to object "prejudiced" his defense. *See* *Cunigan v. Hurley*, 2004 WL 540446, at *2 (6th Cir. Mar. 17, 2004) (finding though counsel failed to request proper jury instruction on entrapment, petitioner was not entitled to habeas relief on ineffective assistance claim as he could not show "but for" counsel's failure the result of trial would have been different).

In summary, the Court finds that the improper jury instruction on self-defense did not "so infect[] the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The Court finds that the trial attorney's failure to object to the self-defense jury instruction did not amount to a "fundamental miscarriage of justice." *Cristini*, 526 F.3d at 897. Habeas relief is not warranted on Ground Two.

## IV. Conclusion

For the foregoing reasons, Petitioner's objections (ECF No. 13) are overruled and the Report and Recommendation (ECF No. 11) of the magistrate judge is adopted in its entirety. Jermaine Adams' Petition for a Writ of Habeas Corpus (ECF No. 1) is dismissed.[7] The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken

[7] On September 5, 2019, Petitioner timely filed a Motion for Extension of time to file objections to the Report and Recommendation. ECF No. 12. The Court grants this request. Petitioner's objections are considered herein.

in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

May 29, 2020
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge